UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES MILTON FLEMING, JR., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Commissioner of Social Security, <br><br> Defendant. | Case No. C15-5685-RAJ-BAT <br><br> **REPORT AND RECOMMENDATION** |

James Milton Fleming, Jr., seeks review of the denial of his Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") applications. He contends the administrative law judge ("ALJ") erred by (1) failing to categorize his post-traumatic stress disorder ("PTSD") as "severe" at step two; (2) discounting his Global Assessment of Functioning ("GAF") scores; (3) discounting his credibility based on a fraud investigation report; (4) rejecting the testimony of a lay witness, Cynthia Miller; and (5) failing to include a concentration limitation in the residual functional capacity ("RFC") assessment or the hypothetical posed to the vocational expert ("VE"). Dkt. 12 at 1-2. As discussed below, the Court recommends the Commissioner's final decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

REPORT AND RECOMMENDATION - 1

# BACKGROUND

Mr. Fleming is currently 56 years old, has a high school diploma and additional culinary training, and has worked as a cook, forklift driver, certified nursing assistant, and warehouse laborer.[1] In October 2010 and November 2010, respectively, he protectively applied for SSI and DIB, alleging disability as of October 1, 2007.  Tr. 373-86, 413.  His applications were denied initially and on reconsideration.  Tr. 221-36, 240-53.  The ALJ conducted a hearing on October 30, 2013 (Tr. 37-144), and subsequently found Mr. Fleming not disabled.  Tr. 14-29.  As the Appeals Council denied Mr. Fleming's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-7.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Mr. Fleming had not engaged in substantial gainful activity since his alleged onset date.

**Step two:**  Mr. Fleming's bipolar affective disorder, personality disorder, and polysubstance dependence are severe impairments.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**RFC:**  Mr. Fleming can perform a full range of work at all exertional levels, with some non-exertional limitations: he can perform simple, repetitive tasks.  He can occasionally interact with co-workers, but cannot interact with the public.  He can have few, if any, changes in work routines or settings.

**Step four:**  Mr. Fleming could not perform any past relevant work.

**Step five:**  As there are other jobs that exist in significant numbers in the national economy that Mr. Fleming can perform, he is not disabled.

Tr. 14-29.

---

[1] Tr. 98, 424.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

# DISCUSSION

**1.     PTSD**

Mr. Fleming's assignment of error related to PTSD is actually a challenge to the ALJ's assessment of multiple medical opinions, and will therefore be analyzed as such rather than as a step-two challenge.[4]  *See* Dkt. 12 at 1-2, 4-9.

    A.     **Art Peskind, Ph.D.**

Mr. Fleming first argues that the ALJ erred in discounting the DSHS form opinions of Dr. Peskind, who examined Mr. Fleming in November 2009 and December 2010.  *See* Tr. 624-31, 634-39.  The ALJ gave little weight to both of Dr. Peskind's evaluation reports, finding the psychologist's opinions regarding Mr. Fleming's functional limitations to be unsupported by Dr. Peskind's clinical findings and reliant on Mr. Fleming's non-credible subjective self-report.  Tr. 24.  The ALJ also noted that Mr. Fleming inaccurately described his alcohol use to Dr. Peskind at the time of both examinations.  Tr. 24-25.

Mr. Fleming does not discuss the ALJ's rationale for discounting Dr. Peskind's opinions, and thus has not satisfied his burden to show harmful error in the ALJ's decision with respect to Dr. Peskind's opinions, or with respect to the other medical evidence as discussed below.  *See* Dkt. 12 at 5-6; *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012).

    B.     **Mary Lemberg, M.D.**

Examining psychiatrist Dr. Lemberg wrote a narrative opinion report in June 2011.  Tr. 738-45.  The ALJ discounted Dr. Lemberg's opinion because he found her opinion to be unsupported by Dr. Lemberg's clinical findings and reliant on Mr. Fleming's non-credible

---

[4] This is particularly appropriate because the ALJ noted that Mr. Fleming has been diagnosed with many conditions, and that the ALJ "considered all mental health symptoms regardless of diagnosis."  Tr. 17.

REPORT AND RECOMMENDATION - 3

subjective self-report. Tr. 25.

Again, Mr. Fleming does not address the ALJ's rationale with respect to Dr. Lemberg's opinion, instead inaccurately stating that "[t]he the ALJ's failure to offer an explanation leaves the Court with no means of measuring the validity of his assessment." Dkt. 12 at 7. On the contrary, the ALJ did provide two specific reasons to discount Dr. Lemberg's opinion, and Mr. Fleming has not explained why either of those reasons are insufficient. Therefore, Mr. Fleming has failed to meet his burden to identify a harmful error in the ALJ's assessment of Dr. Lemberg's opinion.

   C.  **Jane Hayward, Psy.D.; Lulu Rivera, LMHC, EMMHS; and Treatment Notes**

Dr. Hayward examined Mr. Fleming in October 2012. Tr. 1379-83. Ms. Rivera examined Mr. Fleming in October 2011. Tr. 1393-95. The ALJ gave both opinions little weight for multiple reasons. Tr. 26-27. Mr. Fleming summarizes the reports written by Dr. Hayward and Ms. Rivera, and cites mental health treatment notes (Tr. 1129), but does not mention the ALJ's analysis of that evidence or identify any error in the ALJ's decision with respect to that evidence. Dkt. 12 at 7-8. Accordingly, Mr. Fleming has again failed to meet his burden to identify an error related to this evidence.

   D.  **Appeals Council Evidence**

Mr. Fleming argues the Appeals Council "did not correctly evaluate the medical evidence submitted post-hearing[.]" Dkt. 12 at 8. The Appeals Council reviewed but rejected medical opinions submitted post-hearing as unrelated to the period at issue before the ALJ, because the opinions post-dated the ALJ's decision by approximately six months. *See* Tr. 1-7. Mr. Fleming attached the rejected evidence to his opening brief. *See* Dkt. 12-1.

The argument fails for several reasons. First, this Court lacks the jurisdiction to review

whether the Appeals Council correctly denied a request for review of an ALJ's written decision. *See Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council denied a request for review, it is a non-final agency action not subject to review because the ALJ's decision becomes the final decision of the Commissioner."). Hence the Court lacks the jurisdiction to determine whether the Appeals Council improperly evaluated the post-hearing medical evidence as Mr. Fleming claims.

Second, the Appeals Council in this case did not make the post-hearing evidence that Mr. Fleming submitted part of the administrative record. This is significant because when the Appeals Council considers new evidence in deciding whether to review an ALJ's decision, **and** the Appeals Council incorporates that evidence into the decision, a reviewing court considers both the record before the ALJ as well as the Appeals Council evidence to determine whether substantial evidence supports the ALJ's decision. *See Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). In this case, however, the Appeals Council declined to incorporate the new evidence into the administrative record, and the decision to do so is not judicially reviewable. Tr. 1-7; *Taylor v. Comm'r of Social Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

Because the Appeals Council did not incorporate the new evidence into the administrative record, the facts of this case are distinguishable from *Brewes* and the Court cannot consider whether it undermines the ALJ's decision. *See Knipe v. Colvin*, 2015 WL 9480026, at *5 (D. Or. Dec. 29, 2015) (Interpreting *Brewes* as requiring a district court to consider post-hearing evidence only where the Appeals Council both considered the new evidence and made it part of the record.). The Commissioner argued that *Brewes* does not apply to the factual circumstances of this case, and Mr. Fleming did not file a reply brief. *See* Dkt. 13 at 10. In

REPORT AND RECOMMENDATION - 5

short, because the new evidence cited by Mr. Fleming was not made part of the administrative record by the Appeals Council, the Court cannot consider whether it undermines the ALJ's decision. To do so would require the Court to address the propriety of the Appeals Council's decision to not make the new evidence part of the administrative process, which something the Court cannot do.

Admittedly, the Court's inability to review the Appeals Council's actions, here, means that potential due process violations stemming from the Appeals Council's decision whether to make new evidence part of the record could elude judicial review. But as Mr. Fleming presented no argument as to this potential problem, the Court declines to *sua sponte* make the argument for him.

In any event, the Court notes the post-hearing evidence presented to the Appeals Council appears to be duplicative of the evidence presented to the ALJ. For example, Mr. Fleming argues that the post-hearing medical opinion of Michael Johnson, M.D., supports his argument that the ALJ erred in finding him not disabled. *See* Dkt. 12 at 9-11. But as Mr. Fleming himself points out in his opening brief, the limitations noted by Dr. Johnson were also presented to the ALJ via Mr. Fleming's testimony, which as discussed *infra* was properly discounted. *Id.* at 11. In short, given the duplicative nature of the post-hearing evidence presented to the Appeals Council, the Court cannot say that the new evidence undermines the ALJ's final decision, even if the Court had the jurisdiction to do so.

**2.     GAF Scores**

The ALJ cited various GAF scores in the record and discounted them for several reasons. Tr. 27. First, the ALJ noted that GAF scores rate the severity of symptoms or functioning, and that the clinicians who rated Mr. Fleming's GAF did not explain whether they were rating his

symptoms or his functioning.  *Id*.  Without that specificity, the ALJ found that the GAF scores were not useful in performing the function-by-function assessment required of an ALJ, and did not correspond to the agency's severity requirements, either.  *Id*.  The ALJ also noted that to the extent the GAF scores reflected consideration of Mr. Fleming's description of his functioning, that description was not entirely credible.  *Id*.  Finally, the ALJ noted that the most current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") omits GAF scores.  *Id*.

Mr. Fleming's brief focuses only on the ALJ's last reason, and argues that because GAF scores were still included in the version of the DSM in existence at the time of his examinations, the ALJ erred in applying the new DSM retroactively.  Dkt. 12 at 9.  This argument fails to grapple with the ALJ's multiple other reasons to discount the GAF scores, all of which are legitimate.  Given that the GAF scores in the record are unexplained and do not correspond to factors relevant to disability adjudication, the ALJ did not err in discounting them.

**3.    Credibility**

Mr. Fleming challenges the portion[5] of the ALJ's adverse credibility determination related to the investigation report written by the Cooperative Disability Investigations Unit ("CDIU").  *See* Tr. 23.  The ALJ noted how Mr. Fleming's subjective statements made at the hearing and to medical providers were inconsistent with statements made to CDIU investigators.  Tr. 23, 1510-21.

Mr. Fleming argues that "the ALJ lost cite [*sic*] of the medical evidence by relying only upon the CDIU Investigation report which lacks any evidentiary value."  Dkt. 12 at 12.  This

---

[5] Mr. Fleming does not challenge the ALJ's numerous other reasons to discount his credibility, which renders harmless any potential error related to the CDIU evidence.  *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  The Court will nonetheless address Mr. Fleming's challenge to the CDIU-related reason.

REPORT AND RECOMMENDATION - 7

argument overstates the primacy of the CDIU evidence in the ALJ's decision: the ALJ's discussion of the CDIU report amounts to half a page of a 16-page decision.  *See* Tr. 23.

Mr. Fleming also argues that the Commissioner should only order CDIU investigations on a "sparing" basis and when necessary.  Dkt. 12 at 12 (citing Hearings, Appeals and Litigation Law Manual (HALLEX) I-5-1-15).  There is no evidence that this HALLEX provision was violated in this case, and in any event, HALLEX provisions are not judicially enforceable.  *See Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) ("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual.").

Mr. Fleming also challenges various conclusions that the ALJ drew from the CDIU report, pointing to other evidence that could support different conclusions.  Dkt. 12 at 13-15.  This line of argument does not establish that the ALJ's interpretation of the evidence was not reasonable, however, and therefore fails to establish error.  *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Lastly, Mr. Fleming argues that his due process rights were violated because he was not provided an opportunity to "cross examine the authors of the CDIU report in person and examine the investigator's notes taken contemporaneously."  Dkt. 12 at 15 (citing *Calvin v. Chater*, 73 F.3d 87, 93 (6th Cir. 1996)).  Mr. Fleming was provided an opportunity to cross-examine one of the authors of the report telephonically; that investigator had moved since the time of the investigation and the ALJ indicated that a telephonic appearance was reasonable under these circumstances.  *See* Tr. 42-43.  The ALJ also indicated that producing the other author of the investigation report would be duplicative.  Tr. 42.

REPORT AND RECOMMENDATION - 8

Mr. Fleming cites no binding authority to support his claim of a due process violation. The Sixth Circuit case he cites relates to whether a claimant was entitled to a subpoena in order to cross-examine a physician, and the court there concluded that the claimant was not entitled to a subpoena for that purpose. *Calvin*, 73 F.3d at 93. Thus, this case does not support Mr. Fleming's position.

To the extent that Mr. Fleming argues that the CDIU report was inadmissible due to its unreliability, the support for this argument is thin to non-existent. Mr. Fleming block-quotes an unidentified source (Dkt. 12 at 15-16) and cites inapposite case authority as support for his position. Dkt. 12 at 15-16. Mr. Fleming fails to acknowledge that the Ninth Circuit has indicated that CDIU investigations are appropriate and the evidence generated thereby may be relied upon by ALJs. *See Elmore v. Colvin*, 617 Fed. Appx. 755, 757 (9th Cir. Jul. 15, 2015).

Accordingly, Mr. Fleming has failed to identify error in the ALJ's adverse credibility determination.

**4.     Lay Witness**

Mr. Fleming's friend, Ms. Miller, testified at the hearing and the ALJ discounted this testimony as inconsistent with the medical evidence and the CDIU report. Tr. 27, 118-31. Mr. Fleming argues that the ALJ erred in "stating that the claimant was not credible, [and] therefore, by association Ms. Miller's testimony could not be credible." Dkt. 12 at 16. But the ALJ did not so claim: the ALJ found Ms. Miller's testimony to be inconsistent with the medical evidence and the CDIU report. Tr. 27. These reasons are germane reasons to discount Ms. Miller's testimony, and Mr. Fleming has failed to establish error in the ALJ's assessment. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons for discounting lay testimony included inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports).

### 5. RFC/VE Hypothetical

Mr. Fleming argues that the ALJ erred in omitting concentration limitations in the RFC assessment and VE hypothetical. Dkt. 12 at 17-18. But the evidence supporting the concentration limitations cited by Mr. Fleming includes only opinion evidence that was discounted or rejected by the ALJ, or is not part of the administrative record, and Mr. Fleming has not established error in the ALJ's decision related to that evidence. Accordingly, Mr. Fleming has not established error in the RFC assessment of VE hypothetical. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (holding that an RFC assessment/VE hypothetical need not account for limitations the ALJ properly rejected).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **March 24, 2016.** If no objections are filed, the Clerk shall note the matter for March 25, 2016, as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 10th day of March, 2016.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11